## Mary M. Herrick v. The Tribune Co. et al.

1. LIBEL—*Meaning of Words Not to be Extended by Innuendo.*—The meaning of words can not be extended by an innuendo.

2. SAME—*Court to Decide Whether Language is Capable of Bearing Meaning Assigned by Innuendo.*—Upon demurrer it is for the court to say whether the language complained of is capable of bearing the meaning assigned to it by the innuendo.

3. SAME—*Innuendoes Not to be Treated as Surplusage.*—Upon a demurrer to a declaration in libel, the innuendo can not be treated as surplusage, nor can the plaintiff, upon demurrer nor upon trial, reject that meaning and resort to another.

4. SAME—*Written Language Actionable Per Se.*—Written language, which has a tendency to bring the plaintiff into disgrace, to diminish

Herrick v. Tribune Co.

her reputation, to induce an ill opinion of her, or to alter her situation in society for the worse, is actionable *per se.*

**Libel.**—Error to the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed June 5, 1903.

SAMUEL J. LUMBARD and JOHN W. BURDETTE, attorneys for plaintiff in error.

As distinguished from slander it is sufficient to render written publications actionable as libelous, if their tendency is to injure the reputation of the plaintiff, and words not actionable if merely spoken may be so by the mere circumstance that they are written or printed. Odgers on Slander & Libel, 4th Ed., Sec. 176; 13 Am. & Eng. Enc. Law, 298, and authorities their cited; Cerveny v. Chicago Daily News Co., 139 Ill. (353–4); Gerald v. Inter Ocean Pub. Co., 90 Ill. App. 205 (209).

A. S. TRUDE, attorney for defendants in error.

"When innuendoes are employed by plaintiff in his or her declaration to give meaning to usually ambiguous words, which is demurred to, then it is for the court to decide whether the language is capable of bearing the meaning assigned by innuendo; whether the meaning is properly assigned to the language is for the jury." Townshend on L. & S. (2d Ed.), 538; Newell on Slander & Libel, 2d Ed., p. 290, Sec. 4, 612.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

The writ of error in this cause is sued out to reverse the judgment of the Circuit Court sustaining a demurrer to the declaration in an action for an alleged libel.

The declaration consists of eleven counts. Six of these close with the innuendo "Thereby meaning and intending falsely that plaintiff had feloniously caused the death of said Edward P. Herrick."

The meaning of words can not be extended by innuendo. Townshend on Slander and Libel, Sec. 337; Patterson et ux. v. Edwards et ux., 2 Gilman, 720.

Upon demurrer it is for the court to say whether the language complained of is capable of bearing the meaning assigned to it by the innuendo. Townshend on Slander and Libel, Sec. 342.

There is in the language used no direct charge that the plaintiff had done anything that could reasonably be said to be criminal or immoral, nor are the words capable of bearing the meaning assigned by the innuendoes.

Counsel urge that the innuendoes can be treated as surplusage and the counts sustained by disregarding them. Whatever as to certain words may be done after verdict, upon the demurrer in this case, the innuendoes could not be treated as surplusage. They contain the meaning attached to the words by the plaintiff and charged by her as the significance they have. Neither upon demurrer was she, nor upon trial would she have been at liberty to reject that meaning and resort to another. Strader v. Snyder, 67 Ill. 404; Townshend on Slander & Libel, Sec. 338.

The court upon the hearing of the demurrer was called upon to say whether the various counts of the declaration were, as they stood, good; not whether with amendment they would be sufficient.

Some of the counts contain a colloquium setting forth that one Edward P. Herrick had died and that a coroner's inquest was about to be held in reference thereto. This contemplated inquest is charged to have been spoken of by the defendants as the "Herrick case;" and by innuendo this language is declared to mean "plaintiff's case."

The words used are not capable of bearing much meaning. It does not appear that the plaintiff ever had a case of any kind or that any case had been or was spoken of as her case. The coroner's inquest, certainly, was not "the case" of a living woman.

By an examination of the transcript filed in this court it is not easy, in all instances, to determine with certainty the beginning and end of each count.

That called the amended seventh count contains a colloquium to the effect that a certain inquest was about to be

Herrick v. Tribune Co.

conducted by the coroner concerning the death and the cause thereof of Edward P. Herrick with whom plaintiff resided up to and at the time of his death; that it had been charged that said Herrick had not come to his death from natural causes and that plaintiff had caused his death; "and the defendant, well knowing the premises, did maliciously publish a certain false and scandalous libel of and concerning the plaintiff and the death of said Herrick, and of and concerning said inquest, and said charge that said Herrick had not died a natural death, and the charge that plaintiff had caused the death of said Herrick." Thereafter follows matter, said to have been so published, containing no defamatory charges, but a narrative of that alleged to have been said by various parties, and statements as to what various persons " will," at the coroner's inquest, testify as to matters seemingly bearing upon the death of said Herrick and other persons; and also as to "alleged bucket shop speculations of plaintiff," and as to " frequent quarrels owing to plaintiff's alleged habit of speculating," and as to statements made concerning money, for which " Ferdinand Lynburner worked hard," being lost by plaintiff's " attempts to forecast the grain market."

The commission of neither crime nor misdemeanor is charged to plaintiff, nor is she alleged to have any loathsome or contagious disease; nor are the words said to have been uttered of her in respect to her calling or profession; nor is the language such as necessarily or as a natural and proximate consequence would cause her, so far as appears, any pecuniary loss; in other words, is not such as necessarily or by a presumption of evidence would occasion damage to plaintiff or her affairs.

The language if uttered orally would not have been actionable *per se*. Townshend on Slander and Libel, sections 56, 57, 70, 146–148.

The language does have a tendency to bring the plaintiff into disgrace, to diminish her reputation, to induce an ill opinion of her, to alter her situation in society for the worse; and being written, the publication is, therefore,

actionable, *per se*. Townshend on Slander and Libel, Sec. 176; Hillhouse v. Dunning, 6 Conn. 391–408; 18 Am. & Eng. Ency. of Law, Second Ed., p. 863; Cropp v. Tilney, 3 Salkeld, 225; Cerveny v. Chicago Daily News Co., 139 Ill. 353–354; Gerald v. Inter Ocean Publishing Co., 90 Ill. App. 205–209.

Logically there is no reason why the same words should, if written, be actionable *per se*, while if merely spoken they are not; although there is reason why greater damages should be allowed for written than for spoken language, because of the more permanent character of the utterance, the greater deliberation usually attending it, and, in case of printed matter, the wider publicity. The rule is, however, well established.

We are therefore of the opinion that the demurrer to what seems to be the seventh amended count, being the last count contained in the transcript, was improperly sustained. We do not regard the first amended count as imputing a want of chastity or tending to blacken the reputation of the plaintiff.

Counsel for appellee say that for the defendants to do less than they did " would be to suppress the news and to abdicate their functions as publishers of current events of public importance in good faith and without malice."

For the purposes of the demurrer it is an admission of the publication charged and that it was false. Whether it was actually true as well as whether it was published in good faith with reasonable grounds for believing that the statements set forth in the publication were true are questions not submitted to this court or for its consideration upon this hearing.

The judgment of the Circuit Court is reversed and the cause remanded.