**Julius Limbach, Appellant, v. William Reinbold et al., Appellees.**

### Gen. No. 29,987.

Libel and slander—*campaign document imputing inefficiency and misconduct to incumbent of office seeking re-appointment.* Posted, published and circularized typewritten documents issued by defendants in the course of a campaign for the election of village officers in a village in which plaintiff was acting as village attorney, imputing inefficiency and misconduct held not to constitute a libel upon plaintiff as a citizen, voter and resident of such village or as attorney for the same.

Appeal by plaintiff from the Superior Court of Cook county; the Hon. Hugo Pam, Judge, presiding. Heard in the third division of

this court for the first district at the March term, 1925.   Affirmed.
Opinion filed December 2, 1925.

JULIUS LIMBACH, *pro se.*

EDMOND W. POTTLE and EDWIN K. WALKER, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal in a libel suit from a judgment sustaining a general demurrer to the plaintiff's declaration, and dismissing the suit.

The declaration contains three counts. The alleged libel consists of certain posted, published and circularized typewritten documents which were issued by the defendants in the course of a campaign in the Village of Villa Park, Cook County, Illinois, for the election of a village trustee and a president of the board of trustees.

The claim of the plaintiff is that as a citizen, voter and resident of Villa Park, and as attorney for that village, he was injured in his character, reputation and practice.

The document which it is charged constitutes the libel is too long to be set forth verbatim. The following is sufficient, however, in its substance and shows its general tenor:

"INTRODUCING THE PROGRESSIVE PARTY TO THE VOTERS OF VILLA PARK.

READ OUR PLATFORM AND SEE WHAT WE STAND FOR.

"We ask for your vote because:
"We are opposed to extravagance in the use of public funds.
        *    *    *

"We believe that no one man should be allowed to dictate the policies and acts of the Village Administra-

Limbach v. Reinbold, 239 Ill. App. 49.

tion. The officers of the Village are the servants of the people, and should be guided by their wishes.

&ast; &ast; &ast;

"We believe the czar should be forced to abdicate.

&ast; &ast; &ast;

Progressive Party Campaign Committee.

Progressive Party Platform 1923.

&ast; &ast; &ast;

"We believe the best interests of the Village would be served by the appointment of a new Village attorney.

&ast; &ast; &ast;

In Our Opinion There Should Never Be a Discrepancy of $100,000.

&ast; &ast; &ast;

"It will be our policy never to take the 6% maximum allowed by the Public Utility Law, unless the actual work to be done entitled those receiving a percentage compensation to that amount.

&ast; &ast; &ast;

A Few Questions.

The Answers to Which Would Be of Interest to the Voters of Villa Park.

"1. Has the present Village Board ever enacted any legislation without orders from the czar?

"2. Should the affairs of the Village be directed by a non-voter?

"3. Why has President Baker been so obedient to 'his master's voice,' and why has he so persistently ignored the wishes of the people?

"4. Did any of the candidates who are up for election this spring receive any of the 6% on the sewer? If so, how much?

"5. Why did Mr. Baker appoint himself a Commissioner on the sewer with a fee of $1,500? And why did the Court disallow the fee?

"6. Why were the Great Western and the Chicago, Aurora & Elgin Railroads not assessed on the original spread of sewer assessment? (Ask the ring).

"7. Why were the assessments against those two roads reduced after the amounts were fixed by the court?

"8. Why did the present administration spend Village funds (your money and mine) trying to force the sewer project through at a cost nearly $100,000 above what it should have been? (Ask the ring, they know).

"9. Do you know that the Village Board has already spent nearly $1,000 of the taxpayers' money for the preparation and publication of three ordinances, covering the proposed new water plant, at least two-thirds of which was wasted as two of the ordinances were wrong?

"10. How does Mr. Haas explain the fact that many of the catch basins in the north side streets were set two or three feet too low and were O. K.'d by him as Inspector on the Street Improvement projects. * * *"

The declaration, in addition to setting up the words of the document claimed to be a libel, alleges that the plaintiff for the last seven years lived with his family in Villa Park, DuPage County, a suburb eighteen miles from Chicago; that he had practiced law for twenty years, and had built up a practice in Villa Park; that he was a voter and voted in the Village of Villa Park; that for the last six years preceding the election of April, 1923, he was, by appointment, the acting attorney for the village; that he prepared all the ordinances, and was influential with the village administration; that the defendant, Reinbold, was on and prior to April 17, 1923, a candidate for president of the village, and as such was opposed to the one who was then the incumbent of that office; that the latter as president had given out that if re-elected on April 17, 1923, he would favor the reappointment of the plaintiff to succeed himself as village attorney; that the defendant, Frederick, was a candidate for trustee in opposition

to the one who was the incumbent of that office; that the plaintiff during his term of office had conducted the legal proceedings pertaining to the installation of a village sewer system and a village water plant; that the defendants constituted themselves to be a "Progressive Party Campaign Committee," to prosecute their campaign, and, as such, wickedly and maliciously intending to injure the plaintiff, and to bring him into public scandal and disgrace, and to further their own political designs, on April 1, 1923, published the alleged libel in the Village of Villa Park.

It is urged for the plaintiff that there are five statements in the publication which, when taken together and considered with the context, constitute libelous matter. They are as follows:

"1.   Should the affairs of the Village be directed by a nonvoter?

\*   \*   \*

"2.   Did any of the candidates who are up for election this spring receive any of the 6% on the sewer? If so, how much?

\*   \*   \*

"3.   Why were the Great Western and the Chicago, Aurora & Elgin Railroads not assessed on the original spread of sewer assessment?   (Ask the ring). Why were the assessments against those two roads reduced after the amounts were fixed by the court, and who worked to get them reduced?

"4.   Why did the present administration spend Village funds (your money and mine) trying to force the sewer project through at a cost nearly $100,000 above what it should have been?   (Ask the ring, they know).

"5.   Do you know that the Village Board has already spent nearly $1,000 of the taxpayers' money for the preparation and publication of three ordinances covering the proposed new water plant, at least two-thirds of which was wasted, as two of the ordinances were wrong?"

(1) As to the first charge, that the plaintiff was a nonvoter and directing the affairs of the village, it is urged that it was intended thereby to charge him with having voted unlawfully, or having failed to exercise his right to vote. Although it may well be that charging one who acts as attorney for a village and, therefore, takes part in the administration of the village affairs, with being a nonvoter, may, if untrue, to some extent scandalize him, we do not feel justified in concluding that the use of such words tend "to disgrace and degrade plaintiff or hold him up to public hatred, contempt or ridicule, or cause him to be shunned or avoided." *Foster v. Boue,* 38 Ill. App. 613. In the latter case it is stated that "the court ought to be able to see that a party's reputation was liable to be injured in some serious and material manner."

(2) The words of the publication, "Did any of the candidates who are up for election this spring receive any of the 6% on the sewer? If so, how much?" obviously did not refer to the plaintiff, as he held the position of attorney for the village, and held that position by appointment, and not by election.

(3) The words of the publication which pertain to the assessments of the Great Western and the Chicago, Aurora & Elgin railroads and which asked why those railroads were not assessed on the original spread of the sewer assessment and why their assessments were reduced after the amounts were fixed by the court, and who worked to get them reduced, cannot be said, necessarily, to imply, if interpreted fairly, anything that would tend to disgrace the plaintiff, or to injure him in any serious and material manner.

(4) The words, "Why did the present administration spend Village funds (your money and mine) trying to force the sewer project through at a cost nearly $100,000 above what it should have been? (Ask the ring, they know)," were a criticism of certain conduct

of the administration, including the plaintiff in connection with a sewer project, but they cannot fairly be said, interpreting the words as they are, to reflect in any way on the good reputation of the plaintiff, or to hold him up in any way to public hatred, contempt or ridicule.

(5) The words, "Do you know that the Village Board has already spent nearly $1,000 of the taxpayers' money for the preparation and publication of three ordinances covering the proposed new water plant, at least two-thirds of which was wasted, as two of the ordinances were wrong?" constitute merely a suggestion that in the judgment of the defendants certain work was not well done, as a result of which the Village lost money. That, of course, may be considered as unfair criticism, but it cannot be said that it contains, interpreted according to the normal meaning of the words, what may result in a serious and material hurt to the plaintiff's reputation.

A consideration of the following cases, *City of Chicago v. Tribune Co.*, 307 Ill. 595; *Sullivan v. Illinois Publishing & Printing Co.*, 186 Ill. App. 268; *Herrick v. Tribune Co.*, 108 Ill. App. 244, leads to the conclusion that the publication in question was not libelous. Printed and published criticism of an official, such as a village attorney, is not necessarily libelous, simply because it is unjust. To be actionable, a fair interpretation of it must bring about the conclusion that the one to whom the publication pertains may be hurt in some serious and substantial manner.

All good men in offices of public trust are, and should be, hypersensitive to unjustifiable derogatory criticism; and that they generally are is evidence of their anxiety that the truth alone should be known and published; nevertheless, the law having regard to what is efficacious and practical, as well as to what is right and true, does not shield them, at least in political campaigns, from all that hurts, but only from that

which being untrue tends quite directly to material and substantial harm.

Considering not only the most conspicuous elements of the publication, but the whole of it, and that it was a campaign document, with all that imports, it is our judgment that, under the law as it exists now in this state, it does not constitute a libel.

The judgment, therefore, will be affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.