## DUVIVIER v. FRENCH et al.

(Circuit Court of Appeals, Seventh Circuit. June 13, 1900.)

### No. 660.

1. LIBEL—GRAVAMEN OF ACTION—SUFFICIENCY OF DECLARATION.

The gravamen of an action for libel is not the injury to the plaintiff's feelings, but damage to his reputation in the eyes of others, and a declaration is insufficient which fails to show that the alleged libelous article was understood by its readers to refer to the plaintiff.

2. SAME—PLEADING—OFFICE OF INNUENDO.

In a declaration for libel, where the alleged libelous publication does not show on its face that it has reference to plaintiff, facts extrinsic to the article, necessary to identify him as the person referred to, cannot be embodied in an innuendo.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The action in the court below was in case for damages growing out of the publication of an alleged libel. The declaration is as follows:

"A. Devin Duvivier, plaintiff in this suit, by his attorney, Kenesaw M. Landis, complains of Florence French and Musical Courier Company, a corporation, etc., defendants, of a plea of trespass on the case.

"For that the said plaintiff is a subject of Her Brittanic Majesty, the Queen of England, and the said defendant, Florence French, is a citizen and resident of the State of Illinois, and the said Musical Courier Company is a corporation organized and existing under and by virtue of the laws of the State of New York, and is a citizen and resident of said last named state.

"And for that whereas, the plaintiff, from, to-wit: the year A. D. 1872,

until the year A. D. 1891, was continuously engaged in the city of London, England, in the practice of his profession as a teacher of the art of singing, and the plaintiff did, during said period and until the plaintiff removed from said city of London, have as pupils, studying the art of singing, under the direction of the plaintiff, a large number of women and girls.

"And for that whereas, the plaintiff, from, to-wit: the month of October, A. D. 1891, to the present time, has been continuously, and now is engaged in the practice of his profession, as a teacher in the art of singing, in the city of Chicago,. in the State of Illinois, and the plaintiff, during the said period last aforesaid, has had, and now has, as pupils studying the art of singing, under the direction of the plaintiff, a large number of women and girls.

"And for that whereas the plaintiff, before, and at the time of, the committing by the defendants, of the several grievances hereinafter mentioned, was a person of good name, credit and reputation, and deservedly enjoyed the esteem and good opinion of persons seeking instruction in the art of singing and of his neighbors and other worthy citizens of this state; yet the defendants, well knowing the premises, but wickedly and maliciously intending to injure the plaintiff and to bring him into public scandal and disgrace, on to-wit: the eighth day of September, A. D. 1897, at, to-wit: the District and Division aforesaid, wickedly and maliciously did compose and publish and cause to be composed and published of and concerning the plaintiff in a certain newspaper, called the Musical Courier, whereof the defendant, Florence French, was then and there the reporter and correspondent, and whereof the defendant, Musical Courier Company, was then and there the publisher and proprietor, a certain false, scandalous, malicious defamatory and libelous article containing (among other things) the false, scandalous, malicious, defamatory and libelous matter following, of and concerning the plaintiff, that is to say:

" 'Curiosity led me (meaning the defendant, the said Florence French,) to peruse the pamphlet entitled 'Some Remarks on the Voice' (meaning a lecture delivered by the plaintiff and published by the plaintiff in pamphlet form). It is merely a reproduction of the salient points of a lecture given at the Illinois Music Teachers' Convention. The remarks are such as found in any ordinary publication treating of singing and appear to be copied verbatim. The only raison d'etre for this pamphlet is evidently the opportunity it offers for a vile gratuitous insult and wholesale abuse of a very estimable, conscientious, talented teacher, who is no disciple of quackism—Mr. Karleton Hackett (meaning and intending thereby to imply and charge that the plaintiff was, and is, a disciple of quackism.)

" 'This well-known teacher happens to enjoy the respect and esteem of those who understand honesty and scrupulousness (meaning and intending thereby to charge and imply that the plaintiff does not understand honesty and scrupulousness); moreover he, (meaning Mr. Karleton Hackett) is a gentleman, a state of being which it is possible the author (meaning the plaintiff) of the voice remarks cannot appreciate (meaning and intending thereby to charge that the plaintiff was not, and is not, capable of conducting himself in a polite and gentlemanly manner and that the plaintiff did not, and does not, conduct himself in a polite and gentlemanly manner and that the plaintiff was not, and is not, capable of conducting himself with propriety and that the plaintiff did not, and does not. conduct himself with propriety). I (meaning the said Florence French) notice that in the preface of this pamphlet (meaning the pamphlet so published by the plaintiff as aforesaid) that this erstwhile teacher (meaning the plaintiff) at a famous London School (meaning the Royal Academy of Music) says he (meaning the plaintiff) has 'found it very necessary to modify one's European notions as to the relations existing between masters—no, teachers and pupils. This remark (meaning "he has found it very necessary to modify one's European notions as to the relations existing between masters—no, teachers and pupils") may be indorsed with the remark that this discovery is very beneficial for the pupils. Possibly had the discovery been made earlier Chicago would now possess one singing teacher the less and London one singing teacher the more,' (meaning and intending thereby to charge that the plaintiff's conduct towards his pupils during the plaintiff's professional labors, as teacher of the art of singing in

the city of London, England, as aforesaid, was improper and immoral, and meaning and intending thereby to charge that the plaintiff's relations to his pupils during the plaintiff's professional labors as teacher of the art of singing in the said city of London as aforesaid, were improper and immoral, and meaning and intending thereby to charge that the plaintiff's conduct towards his said pupils and that the plaintiff's relations to and with his said pupils during the plaintiff's professional labors, as teacher of the art of singing in the city of London as aforesaid, were so improper and immoral, that it became, and was necessary for the plaintiff, by reason of said alleged improper and immoral conduct and relations as aforesaid, to abandon his professional labors as such teacher aforesaid in the city of London aforesaid, and to leave and go away from said city of London).

"By means whereof and the committing of which said several grievances by the defendants the plaintiff has been, and is, greatly injured in his good name and reputation and brought into public scandal and disgrace and has been, and is otherwise injured, to the damage of the plaintiff of ten thousand ($10,000) dollars.

"Therefore he brings his suit," etc.

To this declaration the defendants in error filed a general demurrer, which demurrer was, by the circuit court, sustained; and upon this action of the circuit court, sustaining the demurrer, the error relied upon to reverse the case is predicated.

Kenesaw. M. Landis, for plaintiff in error.
Sigmund Zeisler, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

After the foregoing statement of the case, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The gravamen of an action for libel is not injury to the plaintiff's feelings, but damage to his reputation in the eyes of others. It is not sufficient, therefore, that the plaintiff should understand himself to be referred to in the article. It is necessary, to constitute libel, that others than the plaintiff should be in a position to understand that the plaintiff is the person referred to.

The article upon which the action in the court below was based, stripped of innuendos, and of averments in the way of inducement, is as follows:

"Curiosity led me to peruse the pamphlet entitled 'Some Remarks on the Voice.' It is merely a reproduction of the salient points of a lecture given at the Illinois Music Teachers' Convention. The remarks are such as found in any ordinary publication treating of singing, and appear to be copied verbatim. The only raison d'etre for this pamphlet is evidently the opportunity it offers for a vile, gratuitous insult and wholesale abuse of a very estimable, conscientious, talented teacher, who is no disciple of quackism, Mr. Karleton Hackett.

"This well-known teacher happens to enjoy the respect and esteem of those who understand honesty and scrupulousness; moreover, he is a gentleman, a state of being which it is possible the author of the 'Voice Remarks' cannot appreciate. I notice that in the preface to this pamphlet this erstwhile teacher at a famous London school, says he has 'found it very necessary to modify one's European notions as to the relations existing between masters— no, teachers and pupils.' This remark may be indorsed with the remark that the discovery is very beneficial for the pupils. Possibly had the discovery been made earlier, Chicago would possess one singing teacher the less and London one singing teacher the more."

The article in these words, and in these words alone, went to the readers of the Musical Courier. It contains in itself no guide to the identity of the person spoken of, except that, whoever he was, he was the author of the pamphlet named; and the inference derivable from the statement that the pamphlet is a reproduction of a lecture given at the Illinois Music Teachers' Association; and that its author was formerly a teacher in a famous London school, and is now a teacher of singing in Chicago.

It is averred in the inducement that the plaintiff was formerly a teacher in a London school, and is now a teacher of singing in Chicago; but this alone is not sufficient to identify the plaintiff with the person spoken of, for in a city of the size of Chicago there may be many singing masters who formerly were teachers in London schools.

No facts are averred disclosing that any reader of the Courier had ever heard of the pamphlet, or of the lecture, or that any one, not even its publishers, knew that the plaintiff was the author of the pamphlet. Indeed, it is not averred that the plaintiff was the author of the pamphlet. The article, therefore, furnishes no knowledge that may be said, either directly or by reasonable inference, to lead up to the identification of the plaintiff with the person spoken of in the article; and the declaration contains no averment of knowledge, extrinsic to the article, that may, with reasonable certainty, connect the article with the plaintiff. For all that appears on the face of the declaration, the readers of the article in the Courier may, each and all, have reasonably supposed that the article referred to some one other than the plaintiff.

It is true that the declaration avers that the defamatory language was used of and concerning the plaintiff, but, as has already been said, it is not enough, to constitute libel, that the plaintiff knew that he was the subject of the article, or that the defendants knew of whom they were writing; it must appear upon the face of the declaration that persons other than these must have reasonably understood that the article was written of and concerning the plaintiff, and that the so-called libelous expressions related to him.

It is true, also, that in an innuendo it is stated inferentially that the pamphlet was originally a lecture delivered by the plaintiff, and by him published in pamphlet form; but an averment of fact extrinsic to the article, and essential to an identification of the article with the person complaining, cannot be embodied in an innuendo. 13 Enc. Pl. & Prac. 54.

The office of an innuendo is to deduce inferences from premises already stated, not to state the premises themselves. An innuendo is not an issuable averment. Facts extrinsic to the article, and essential to a reasonable identification of the plaintiff with the person referred to, must be set out in the inducement. Id. 52; McLaughlin v. Fisher, 136 Ill. 111–116, 24 N. E. 60.

Let this whole article be read without knowledge that the plaintiff was the author of the pamphlet, or without knowledge of the facts reasonably connecting the plaintiff with the authorship of the

pamphlet, and no one would know that the plaintiff was the person referred to in the article. This want of information, in the absence of the essential introductory averment, must be assumed to have been the state of mind of the readers of the article.

For these reasons, we see no error in the ruling of· the Circuit Court sustaining the demurrer, and it is, therefore, affirmed.