(108 So. 794)

No. 27690.

## STATE v. MELSON.

(March 29, 1926. Rehearing Denied May 31, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬤⟿1131(3).**

Dismissal of appeal in criminal case has effect of affirmance of judgment below.

**2. Criminal law ⬤⟿1114(1)—Supreme Court will consider appeal in criminal case, though record contains no demurrer, motion to quash, bill of exception, motion in arrest of judgment or assignment of errors, and there is no appearance by accused or brief filed in his behalf.**

Supreme Court will consider appeal in criminal case, though record contains no demurrer, motion to quash, bill of exception, motion in arrest of judgment, or assignment of errors, and there is no appearance by accused or brief filed in his behalf, except where accused has broken jail, or fled the jurisdiction.

**3. Forgery ⬤⟿28(1)—Information charging defendant, "alias" A. F. B., with forging indorsement A. F. B. on check held not to charge an offense.**

Information charging defendant, alias A. F. B., with forging the indorsement of A. F. B. on a check *held* not to charge an offense, since it negatives the idea that the writing purported to be the act of another person than defendant; "alias" meaning that accused was called by the one name or the other.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alias.]

**4. Forgery ⬤⟿8.**

It is of essence of forgery or uttering that writing purports to be act of another person.

Appeal from Nineteenth Judicial District Court, Parish of East Baton Rouge; W. Carruth Jones, Judge.

Clarence Melson, alias A. F. Bell, was convicted of uttering a forgery, and he appeals. Reversed, and defendant discharged.

H. K. Strickland and R. F. Walker, both of Baton Rouge, for appellant.

Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and John Fred Odom, Dist. Atty., of Baton Rouge (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

ST. PAUL, J. The defendant was convicted and sentenced to serve "not less than three, nor more than four, years" at hard labor, and he appeals.

The record contains no demurrer, no motion to quash, no bill of exception, no motion in arrest of judgment, and no assignment of errors. There was no appearance for appellant before this court, and no brief was filed in his behalf.

I.

[1, 2] The state has *suggested* that the appeal be *dismissed;* the dismissal of an appeal in a *criminal* case having all the effect of an *affirmance* of the judgment below (wherein *there may be* some difference in civil cases, on account of the terms of the appeal bond). But we prefer to adhere to our practice of *considering* the appeal and *affirming* the judgment if the appeal lacks merit; a practice which has been uniform with this court from the beginning, *except* where the accused has broken jail or fled the jurisdiction.

But there is a line of authorities to the effect that appeals thus presented are entitled to but *scant attention*, it having even been said that this court is *"unquestionably"* powerless to review a question of law which has not been submitted to, or passed upon, by the lower court." State v. Romano, 37 La. Ann. 98 (distinguished, but not disapproved, in State v. Mouton, 42 La. Ann. 1160, 8 So. 631). See, also, State v. Benjamin, 7 La. Ann. 47, 48; State v. Arthur, 10 La. Ann. 265; State v. Bass, 12 La. Ann. 862; State v. Porter, 35 La. Ann. 1159, 1161; State v. Taylor, 37 La. Ann. 40; State v. Lubin, 42 La. Ann. 79, 80, 7 So. 68.

However, there is another line of authorities, "which favor the liberty of the citizen," to the effect that "we feel it to be *our duty*"

to entertain and consider (*carefully*) such appeals. State v. Forrest, 23 La. Ann. 433, citing State v. O'Conner, 13 La. Ann. 486, and State v. Henderson, 13 La. Ann. 489 (this last being the case of *a slave*, condemned to death under a law which had been repealed, whose life was thus saved, and the state and this high court thus spared the disgrace of sanctioning, on a mere technicality, a palpable judicial murder). And such has therefore been the practice prevailing generally with this court; which we believe to be the *better practice*, though involving no little additional labor for the members of this court; since, where the accused is unrepresented, the court must perforce do the work which should have been done by counsel.

We will *adhere* to that practice.

### II.

[3] We think that *on the face of the record* this accused is entitled to be *discharged;* for he is charged with an *impossible* offense.

The information charges (1) that "one Clarence Melson, *alias A. F. Bell,*" feloniously, falsely, and fraudulently "did forge and counterfeit a certain indorsement * * * on the back of a certain check * * * payable to the order of *A. F. Bell,* * * * the said indorsement purporting to be made by *A. F. Bell*"; and (2) that "the said Clarence Melson, *alias A. F. Bell,* * * * having in his possession the said check * * * on the back of which was and is the false, forged, and counterfeited indorsement, to wit, the name *A. F. Bell,*" did knowingly and with intent to defraud "utter and publish [the same] as true."

The *jury* seems to have sensed the situation *partly,* but not wholly; for it *correctly* acquitted the accused of an *impossible* forgery, but *incorrectly* convicted him of *uttering* the same *impossible* forgery.

### III.

It will be seen that the accused is designated as "*alias A. F. Bell.*" Hence the information itself negatives the fact that the said indorsement purported to be the name of *some other person* than the accused. For, "where in an indictment [or information] the name of the accused is given, followed by *alias* and another name, *alias* stands for *alias dictus,* and indicates, not that the person referred to bears both names, but that he is *called by one or the other,*" and hence the use of either one of said names *identifies the accused* as the person referred to. Ferguson v. State, 134 Ala. 63, 32 So. 760, 92 Am. St. Rep. 17; 2 Corp. Jur. 1033, verbo "Alias Dictus."

So that the very information in this case sets forth that the accused is "otherwise called," or known as "A. F. Bell," or *has assumed that name as his own* in this instance, thus (we repeat) negativing the idea that the name "*A. F. Bell,*" was signed or published as the name of some other person than the accused himself.

[4] We are therefore not dealing *here* with a case of forging a *fictitious* name as the name of *some real person other than the accused,* or of uttering the same as such, as in State v. Hahn, 38 La. Ann. 169. For it is of the essence of forgery, or uttering, that the writing (made, altered, or uttered) "purport to be the act of *another person*" than the one charged with the offense. State v. Taylor, 46 La. Ann. 1332, 16 So. 190, 25 L. R. A. 591, 49 Am. St. Rep. 351. And therefore one *cannot* be guilty of forgery or uttering, who makes or issues a writing *as his own,* even if in so doing he uses a fictitious name and his intent be to defraud.

Thus, in Dunn's Case (1 Lea C. C. 59), the resolution of the judges was, that, "in all forgeries, the instrument supposed to be forged must be a false instrument in itself; and, if a person give a note entirely as his own, his subscribing it by a fictitious name will not make it a forgery."

This was followed and approved in Regina v. Martin, 5 Q. B. Div. 34 (1879), wherein one *Robert Martin* drew a check in the name of *William Martin* and gave it for value received

to the prosecutor as his own check, drawn in his own name, but knowing the check would not be honored. He was convicted; but all the judges resolved that the prisoner was not guilty of forgery; the Chief Justice (Cockburn) saying, "Upon authority, as well as upon principle, it is clear that this conviction should be quashed."

### Decree.

The verdict and sentence herein are therefore annulled and set aside, and the charge quashed; and accordingly the accused will be, and he is hereby, *discharged.*