Joseph P. Creitz, Plaintiff in Error, v. James E. Bennett et al., Defendants in Error.

Gen. No. 36,420.

Opinion filed December 13, 1933.  Rehearing denied December 27, 1933.

ALVIN H. CULVER and ORVILLE R. SEITER, for plaintiff in error; ORVILLE R. SEITER, of counsel.

Moses, Kennedy, Stein & Bachrach, for defendants in error; Walter Bachrach and Philip M. Glick, of counsel.

Mr. Justice Hebel delivered the opinion of the court.

The plaintiff brings the judgment entered in this case to this court for review upon a writ of error to the circuit court of Cook county. It appears from the record that the declaration consists of three counts and two additional counts filed by the plaintiff, to which the defendants interposed general and special demurrers, which demurrers were sustained by the court, and a judgment of *nil capiat* was entered against the plaintiff. Thereafter the plaintiff moved to vacate the judgment and for leave to file third and fourth additional counts, which motion was denied by the court on the ground that the proposed additional counts failed to state a cause of action.

This action is brought by the plaintiff to recover damages from the defendants, by whom he was employed and who were engaged in the business of stockbrokers, on the theory that these defendants wrongfully and maliciously declined and refused to give the plaintiff a letter of clearance regarding the plaintiff's business qualifications, honesty and record during the time he was employed by the defendants, as requested by plaintiff's subsequent employer.

The first count and the first and second additional counts are predicated upon a general custom, which at the time of the plaintiff's employment by the defendants and for many years prior thereto, had been, and is now, a general custom among all stockbrokers who are members of the New York Stock Exchange, to furnish to any other stockbroker, who is a member of said Exchange, upon request of such other broker, full and complete information as to the business quali-

fications, honesty and record of any customer's man who had been formerly employed by such broker whenever such former employee should apply to any such other broker for employment as customer's man; and when the record of such former employee so justified, it was, and is, the custom for the former employer to give what is known in said trade as a "letter of clearance," and it is alleged in the first count and the first and second additional counts that the existence of said custom was well known to the defendants at the time of the defendants' employment of the plaintiff, and that the defendants, wilfully, knowingly and maliciously continued to refuse to give plaintiff a letter of clearance and to state facts as to plaintiff's record while employed by the defendants to any other broker or person from whom the plaintiff was seeking employment.

The second and third counts are on the theory that the words spoken by the defendants to the plaintiff's subsequent employer injured the plaintiff in his business and caused the subsequent employer to discharge plaintiff.

The proposed third and fourth additional counts are that the defendants' words and actions and concealment of the truth constituted a wrongful interference with plaintiff's business and resulted in plaintiff's being discharged by his subsequent employer and permanently prevented him from obtaining any other employment as a customer's man.

The writ of error issued in this case was made returnable to the Supreme Court of the State of Illinois, and in the consideration of the cause, the court by its opinion and order transferred the instant case to this court (*Creitz v. Bennett,* 350 Ill. 32) for the reason that there is no constitutional question involved in the proceeding such as would justify a direct appeal to

the Supreme Court, and the cause was one for this court's consideration.

The first contention called to our attention by the plaintiff in this cause is that where there is a general custom among a certain class of employers and employees in a business to furnish information pertaining to the record of former employees to subsequent employers, such custom becomes an implied part of all contracts of employment in such business, and failure to furnish such information by the former employer to subsequent employers is actionable, where such information is maliciously refused and causes damage.

The plaintiff in support of this contention, among other authorities, relies upon the opinion delivered by the court in the case of *Cleveland, C., C. & St. L. Ry. Co. v. Jenkins,* 174 Ill. 398, as being, in part, conclusive. The court said:

"The declaration contains one count, and avers a cause of action in case arising out of a contract. It avers the usage or custom existing upon the road of defendant and other roads, whereby a discharged employee is entitled to such letters, showing the time of service, reason for discharge, etc., thus averring a contractual relation, out of which, as alleged, arose the duty, when such contractual relation was severed, to give a letter or clearance card for the purpose stated. The theory proceeded upon by plaintiff, as charged in the declaration, was, that after his discharge he was entitled to such a clearance card, which was refused him, and without which he could not secure employment on other roads, whereby occurred the damage stated."

In passing upon the allegations in the declaration, the court further said:

"The *gravamen* of the declaration in this case is, that the plaintiff was discharged and refused a clearance card or letter to which he was entitled, without

which he could not obtain employment on any other road, and that he failed to obtain such employment, whereby he suffered damages. The declaration avers a cause of action on the case arising out of a contract. It avers a contractual relation, out of which, as alleged, arose the duty, when such contractual relation was severed, to give a letter or clearance card for the purpose stated. Unless the law imposes on appellant, in some form, the duty to give appellee, as one of its employees, a letter of recommendation or clearance card, his action in this case cannot be sustained. If a legal duty is imposed upon the employer to give to a discharged employee, or one voluntarily leaving his service, a letter of recommendation, such duty must arise either by the common law, by statute, by contract of employment, or by such a generally established usage or custom as would demand it be done. Such usage, however, must be so well known and uniformly acted upon as to raise a fair presumption it was intended to be incorporated in the contract of employment.''

In the consideration of plaintiff's contention, this court will, of course, consider the facts well pleaded as admitted by the defendant's demurrer, so that the custom alleged in the pleadings will be regarded as admitted for the purposes of the demurrer. It is the general rule of law, as applied to this case, that the duty to give an employee a clearance card or a letter of clearance must arise out of the contract of employment, or be required by usage or custom. The common law does not impose such a duty upon the employer. The declaration must therefore allege a duty on the part of the employer to give a letter of clearance by reason of the custom alleged.

Upon an examination of this pleading, the plaintiff has alleged that he was employed as a customer's man by the defendants, and that at the time of his employ-

ment there was a general custom among the brokers on the New York Stock Exchange to furnish members of the Exchange information as to the business qualifications, honesty and record of such customer's man formerly employed by such broker. It further appears from the allegation that whenever such former employee shall apply to any other broker for employment, as a part of such custom, when the record of such former employee would justify, the former employer is to issue a letter of clearance.

We are inclined to the view that the custom as alleged by the plaintiff is a part of the contract entered into between the plaintiff and the defendants, and that the plaintiff is entitled to a letter of clearance, provided, of course, he comes within the provision of the custom alleged by him in his declaration, and that duty required the defendants to act.

The question to be inquired into by this court is: Do the allegations in the declaration establish a duty to be performed by the defendants, a violation of which would justify the plaintiff's action? This duty arises from the custom alleged in the first count of the declaration, that the defendants shall issue a letter of clearance if plaintiff's record justifies; and in the first and second additional counts, that such letter will follow if the plaintiff has discharged his duty under such employment efficiently and honestly.

A fair construction of the language used by the plaintiff in the declaration is that it does not undertake to impose upon the defendants the absolute duty of issuing a letter of clearance when asked for, but, in the first count, that the letter shall be issued when the record of the plaintiff justifies the issuance of such letter; and, in the other counts, that this duty shall be performed by the defendants when the plaintiff discharges his duties honestly and efficiently. The deci-

sion based upon these allegations is left entirely with the defendants.

Can the failure of the defendants to issue a letter of acceptance be considered in and of itself a wilful act such as is alleged in the declaration? It was within the discretion of the defendants, and in the exercise of such discretion can we say that the defendants abused this right when they failed to give the information to the alleged inquiring broker? There is no allegation which would justify such a conclusion. There must be a duty imposed by law upon the defendants before the plaintiff can recover for a breach thereof.

The duty alleged in the declaration is not such that a breach thereof would justify the plaintiff in maintaining his action. This court agrees with the plaintiff that the custom was an implied part of the contract of employment. The parties contracted with reference to this custom, and the law is well established that general custom in the conduct of business becomes an implied part of the contract between the parties engaged in the business to which the custom applies unless it appears from the contract that the intention of the parties was that the custom did not enter into and become a part of the contract.

An examination of the allegations of the declaration clearly indicates that the general custom existed at the time of the employment of the plaintiff, and entered into and became an implied part of the contract, but what facts would state a cause of action based upon the failure to furnish the information called for, is not for this court to decide. What this court does conclude is that the duty as alleged in the declaration does not constitute a cause of action.

The plaintiff in support of the second and third counts, designated the defamation counts, contends that the alleged defamatory words impute a want of integrity and skill or capacity to the plaintiff in his

business or employment, and are, therefore, actionable, even though such words would not be actionable if spoken of plaintiff personally, and cites Newell on Slander, sec. 129, which is as follows:

"Defamatory words falsely spoken or written of a person, which impute to him unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment, are actionable in themselves without proof of special damages; and so, too, are defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade." (Citing authorities.)

However, in the discussion of the words alleged to have been used by the defendants, it is well to have in mind that the alleged slanderous words, when susceptible of it, will receive an innocent construction by interpretation, and the alleged slanderous words cannot be, by innuendo, extended beyond a reasonable construction, and in determining the meaning of the spoken words, they are to be taken in the sense which persons of common and reasonable understanding would ascribe to the words in their ordinary and common acceptation. *LaGrange Press v. Citizens Publishing Co.,* 252 Ill. App. 482; *Fulrath v. Wolfe,* 250 Ill. App. 130.

The words alleged to have been spoken of the plaintiff are:

Q. "What was Creitz' record while with you?"
A. "He could not work for us again."
Q. "What is the matter with him?"
A. "We do not care to talk about it."

which words are alleged in the second and third counts of the declaration to have been spoken by the defendants' agents, and interpreted to mean by innuendo that the plaintiff was accused, in the second count, of dishonest and fraudulent acts while in the employ of the

defendants, and in the third count the same words are interpreted by innuendo to mean that the plaintiff was accused of having been faithless, incompetent and lacking in diligence.

The above quoted words are in and of themselves not slanderous unless a meaning may be ascribed to the words which would be susceptible of a meaning to the injury of the plaintiff in the business or work in which he was engaged.

In reply to the question concerning plaintiff's record, the words that the plaintiff could not work for the defendants again, cannot be interpreted to mean that the plaintiff was dishonest or incompetent, but rather that the spoken words were susceptible of an innocent meaning by interpretation. When the question was put to the defendants' agent, "What is the matter with him?" (the plaintiff) he replied, "We (the defendants) do not care to talk about it." It is obvious that the words in and of themselves are not slanderous; there was no duty to answer further. The counts of the declaration do not allege or impose upon the defendant a duty to speak, and even by innuendo the words cannot be extended to be slanderous. Words are always to be taken in the sense which persons of common and reasonable understanding would ascribe to them; that is, in the ordinary and common meaning of the spoken word.

The plaintiff offered the proposed third and fourth additional counts in support of a motion to vacate the judgment of *nil capiat* entered by the court upon sustaining the general and special demurrers, and for leave to file these additional counts, designated by the plaintiff as wrongful interference counts alleging interference with the contract of employment between the plaintiff and his then employer, upon the theory that even though the words spoken were not defamatory, as a matter of law, nevertheless he may main-

tain the cause against the defendant as a special action based upon malicious acts without justifiable cause, to the plaintiff's damage. In support of this theory the plaintiff cites the case of *Doremus v. Hennessey,* 176 Ill. 608, wherein the court said:

"The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require. Losses wilfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers or those who would be customers, or by preventing others from working for him or causing them to leave his employ by fraud or misrepresentation or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss."

The plaintiff suggests that the same principle announced by the Supreme Court in the case of *Doremus v. Hennessey, supra,* is stated by the Supreme Court in the case of *Carlson v. Carpenter Contractors' Ass'n,* 305 Ill. 331, in these words:

"The law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries

done which cause another loss in the enjoyment of any right of privilege or property."

This court has intimated that the words hereinbefore set forth are not defamatory, as alleged in the second and third counts, and therefore the question is: Did the words used, as alleged in the proposed third and fourth additional counts, constitute an affirmative interference with plaintiff's business relations? The pertinent allegation of the proposed additional counts is to the effect that under the regulations and practices of the Committee on Quotations and Commissions of the New York Stock Exchange said Committee would not approve the application of any customer's man for employment with any stockbroker who was a member of the New York Stock Exchange unless all of the former employers of said applicant clearly and affirmatively advised prospective employers that such applicant had discharged his duties to former employers efficiently and honestly.

It further appears from the pleading that on March 27, 1931, A. O. Slaughter, Anderson & Fox of Los Angeles, California, were stockbrokers and members of the New York Stock Exchange, and employed plaintiff as a customer's man for the sale and purchase of corporate stocks and bonds, at a starting salary of $300 a month, conditioned that an investigation of plaintiff's record with former employers established the fact that plaintiff had discharged his duties efficiently and honestly, and that the Committee on Quotations and Commissions would approve his employment by his then employer; that said firm then informed defendants that they had employed plaintiff as a customer's man, and inquired of the defendants as to the plaintiff's record while in the employ of the defendants; that the defendants knowing that the plaintiff had discharged his duties under such employment with defendants efficiently and honestly, and knowing that

plaintiff could not obtain employment without the approval of his former employers, the defendants wrongfully, wilfully and maliciously, intending to injure the plaintiff in his said business, in response to the inquiry of A. O. Slaughter, Anderson & Fox as to the plaintiff's record, falsely and fraudulently represented that the plaintiff had not discharged his duties as a customer's man during his employment with the defendants efficiently and honestly, and that in response to the inquiry of said A. O. Slaughter, Anderson & Fox, made replies to the questions hereinbefore stated and charged in the allegations of the defamatory counts of plaintiff's declaration, and thereby caused the damage and wrongful interference with the plaintiff's business relations.

The theory of the plaintiff is predicated upon the questions and answers alleged in the second and third counts, designated as the defamatory counts, which we have considered, and for the reasons stated in this opinion we conclude that the words used were not defamatory, and that the plaintiff did not state a cause of action as set forth in said counts. The words not being defamatory, the defendants did not interfere with the plaintiff's employment. No threats were alleged, nor does it appear in the proposed additional counts that the defendants were charged with an affirmative interference with plaintiff's business; nor is there an allegation which would indicate that the defendants' act was that of blacklisting.

We quite agree that the case of *Doremus v. Hennessey, supra,* is good law, but it is not decisive on the questions involved in the proposed third and fourth additional counts. In our opinion the allegations set forth in these counts are not sufficient for the purpose offered, and the court did not err in refusing to vacate the judgment for the purpose of permitting the plaintiff to file the proposed additional counts.

For the reasons indicated in the opinion, we are satisfied that the court did not err in sustaining the general and special demurrers filed to the first and first and second additional counts, and the second and third counts of the declaration, and did not commit error in refusing to vacate the judgment to permit the filing of the proposed additional counts. Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HALL, P. J., and WILSON, J., concur.