(No. 36450.—

Eve Spiro John, Appellee, *vs.* Tribune Company, Appellant.

*Opinion filed January 23, 1962.—Rehearing denied May 23, 1962.*

438

SCHAEFER, J., and HERSHEY, C.J., dissenting.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (HOWARD ELLIS, DON H. REUBEN, and GEORGE D. NEWTON, JR., of counsel,) for appellant.

SIDNEY Z. KARASIK, of Chicago, (MARY M. SHAW, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff, Eve Spiro John, instituted a libel action in the circuit court of Cook County to recover damages from the defendant, Tribune Company. There was a verdict and

judgment for defendant, and plaintiff appealed to the Appellate Court, where the judgment was reversed and the cause remanded for a new trial. (*John* v. *Tribune Co.*, 28 Ill. App. 2d 300.) We have allowed defendant's petition for leave to appeal, despite the refusal of the Appellate Court to strike the remanding portion of its order in accordance with section 75(2)(c) of the Civil Practice Act, (Ill. Rev. Stat. 1959, chap. 110, par. 75(2)(c),) and have taken with the case a motion by defendant that this court grant such relief as may be necessary to require the Appellate Court to strike the remanding order.

Essential background for a consideration of the issues raised here show that the suit for libel was generated by a raid made by Chicago police on 4417 South Ellis Avenue in Chicago, after they had received a report that immoral activities were occurring at such address. The building was an apartment building and, at the raid, the building's owner, Dorothy Clark, and several women found in her apartment were arrested and charged with prostitution. Defendant first published a story about the raid and a second story about the court appearance of those arrested. The first publication read:

"Five women, one identified as a former girl friend of Tony Accardo, Capone gangster, were seized by vice squad police last night in a raid on a lavishly furnished nine-room apartment at 4417 Ellis Avenue.

"Detectives Jack Woessner, Edward Puhr, and Patrick Rafferty said they made the raid after an unnamed policeman paid a $100 fee to one of the women to obtain evidence of prostitution in the apartment. Two men seized as they were entering the apartment were questioned and released.

"Dolores Reising, 57, alias Eve Spiro and Eve John, who, police said, was known years ago as Accardo's woman friend, was held as the suspected keeper of the apartment."

The second publication was:

"Five women arrested by Detectives Jack Woessner and

Edward Puhr of Hyde Park station in a vice raid at 4417 Ellis Ave. Saturday night will appear in Women's court Wednesday.

"Dorothy Clark, 57, who gave 4417 Ellis Av. as her address, was charged with being keeper of a disorderly house and selling liquor without a license. Police said she also is known as Dolores Reising, Eve Spiro, and Eve John, and was known years ago as a girl friend of Tony Accardo, Capone gangster."

Plaintiff's complaint, as ultimately amended, alleged that both articles were "of and concerning her" because her name was Eve Spiro John. Defendant moved to dismiss the complaint on the ground that neither of its publications was "of and concerning" plaintiff but, instead, were about Dorothy Clark-Dolores Reising, the plaintiff's landlady. The trial court sustained defendant's motion and dismissed the action. On appeal by plaintiff, however, the Appellate Court reversed the order of dismissal and remanded the cause with directions that defendant answer and that the cause be tried. (*John* v. *Tribune Co.* 19 Ill. App. 2d 547). Thereafter, the cause was heard, the jury returned a verdict for defendant and judgment for defendant was entered on the verdict. On appeal by plaintiff the Appellate Court again reversed the judgment for defendant, this time for trial errors, and remanded the cause for a new trial. (28 Ill. App. 2d 300.) As previously related, the matter is now before us on leave to appeal granted.

Under the procedural background existing, the order of the Appellate Court in the first appeal is not binding upon us, and we may now review it as a part of the record in the case. (*Hall* v. *Chicago and North Western Railway Co.* 5 Ill.2d 135, 146-148.) Accordingly, defendant has renewed its attack on plaintiff's complaint and the first issue for determination is whether defendant's language can be read as "of and concerning" the plaintiff as she alleged in her complaint. Numerous decisions hold that whether an article is

susceptible of the construction for which a plaintiff claims is a question of law for the court, to be resolved by reading the offending language stripped of innuendo. *Latimer* v. *Chicago Daily News, Inc.,* 330 Ill. App. 295; *Life Printing and Publishing Co.* v. *Field,* 324 Ill. App. 254; *Kulesza* v. *Chicago Daily News, Inc.* 311 Ill. App. 117; *Duvivier* v. *French,* 104 Fed. 278.

Under the affidavits filed pursuant to section 48 of the Civil Practice Act, plaintiff was a 27-year-old practicing psychologist, and resided in an apartment below the one raided. Her maiden name had been Eve Spiro and her name at the time, although divorced, was Eve John. She was the only person with that name at the address, but was in no manner involved with the raid, or any of the immoral activities of her landlady.

Neither of defendant's articles identifies more than one individual as the person arrested and charged as being the keeper of the disorderly house, thus the defendant's language is either "of and concerning" the plaintiff's landlady or is "of and concerning" the plaintiff. The publications cannot, as they are written, be "of and concerning" both persons. The plaintiff is not 57 years of age, has never used the names Dorothy Clark or Dolores Reising, and is not the only person who, at the time of the publication, resided at 4417 South Ellis Avenue. No claim is made that the publications refer to plaintiff directly, but her contention that the language is "of and concerning" her is founded solely upon the fact that combinations of her full name, Eve Spiro John, were reported as aliases, or also-knowns, of Dorothy Clark or Dolores Reising.

The term "alias," (or "also known",) has not escaped definition by the courts. Its meaning is clear and unambiguous. In *People* v. *Grizzel,* 382 Ill. 11, 24, we said: "When instructions are given using the name of the accused, followed by *alias* and another name, *alias* stands for '*alias dictus*' and indicates, not that the person referred to bears

both names, but that he is called by one or the other, and hence, the use of either one of said names identifies the accused as the person referred to. The true name is that which precedes an *alias dictus*. An *alias dictus* is only reputation and is not the truth." This definition is consonant with those given to the term by other courts and by dictionaries. *State* v. *Melson,* 161 La. 423, 108 So. 794; *Ferguson* v. *State,* 134 Ala. 63, 32 So. 760; *People* v. *Mellon,* 11 N.Y.S. 2d 786; *Read* v. *Holmes,* 3 Bulstr. 296, 81 Eng. Rep. 245; Webster's New International Dictionary, 2d ed. 1957, p. 65.

When defendant's articles are read against the plain meaning of *"alias"*, (or "also known,") it is apparent that neither article is "of and concerning" the plaintiff. When *aliases* or assumed names appear in a publication, the first name given is clearly the subject or "target" of the publication, and such fact is one of common knowledge. A name or names reported as the *"aliases,"* or also-knowns, are the names that have been assumed by the subject identified by the name preceding the *alias,* and this fact, too, is one of common knowledge and understanding. The *alias* names do not change the subject of the publication, (here Dorothy Clark-Dolores Reising,) but simply disclose the subject's false name or names. The *alias* names, therefore, necessarily cannot be read as identifying the "of and concerning" or "target" name of the publication.

We further believe the language in defendant's articles is not libelous of plaintiff when the innocent construction rule is consulted. That rule holds that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law. Although this court has not heretofore expressed the rule, it has been adopted and applied by our Appellate Courts and by Federal Courts sitting in Illinois. (*La Grange Press* v. *Citizen Publishing Co.* 252 Ill. App. 482; *Eick* v. *Perk Dog Food Co.*

347 Ill. App. 293; *Tiernan* v. *East Shore Newspapers, Inc.* 1 Ill. App. 2d 150; *Brewer* v. *Hearst Publishing Co.* 185 F.2d 846; *Epton* v. *Vail,* 2 Ill. App. 2d 287; *Fulrath* v. *Wolfe,* 250 Ill. App. 130; *Davis* v. *Ferguson,* 246 Ill. App. 318; *Dilling* v. *Illinois Publishing and Printing Co.* 340 Ill. App. 303; *Parmelee* v. *Hearst Publishing Co.* 341 Ill. App. 339; *Gogerty* v. *Covins,* 5 Ill. App. 2d 74; *Piacenti* v. *Williams Press, Inc.* 347 Ill. App. 440; *Sullivan* v. *Illinois Publishing Co.* 186 Ill. App. 268; *Crosby* v. *Time, Inc.* 254 F.2d 927; *Schy* v. *Hearst Publishing Co.* 205 F.2d 750; *Creitz* v. *Bennett,* 273 Ill. App. 88.) Since both of the publications here are capable of being construed as referring only to Dorothy Clark-Dolores Reising as the keeper of the disorderly house, they are innocent publications as to the plaintiff.

We conclude that the publications are not "of and concerning" the plaintiff as she alleges in her complaint, and that the Appellate Court was in error on the occasion of the first appeal. Having so concluded, we do not reach the errors which go to the second appeal to the Appellate Court, nor do we affirm or deny the views then expressed by that court.

There remains the question of our jurisdiction, consideration of which we have purposely postponed so that it might be examined in light of the merits of the case. It is plaintiff's first contention that the defendant is not entitled to have the remanding order stricken pursuant to section 75(2)(c) of the Civil Practice Act, the rationale of her arguments being that it is only where a plaintiff loses a judgment in the Appellate Court that the section has application. She argues that the unsuccessful plaintiff in the Appellate Court may gamble all and waive remandment, but that an unsuccessful defendant cannot gamble away the plaintiff's right to a new trial in the same manner. Section 75(2)(c), however, does not distinguish between plaintiffs and defendants, but explicitly provides that in "any case" where there has been a trial on the merits and the successful

"party" loses his judgment in the Appellate Court, such "party" may obtain a striking of the Appellate Court's remanding clause by filing the requisite affidavit. And since our decision in *Bowman* v. *Illinois Central Railroad Co.* 11 Ill.2d 186, there can be no question but what the Appellate Court must strike the remanding order when the statutory affidavit is filed, and there can likewise be no doubt that this court has power in aid of its appellate jurisdiction to issue the appropriate extraordinary writ to bring the record before it. The limitation contended for by the plaintiff is not now in the statute and we must follow its express language in the absence of legislative intent to the contrary. We conclude, therefore, that the defendant was entitled to have the remanding clause stricken by the Appellate Court, and that the cause is properly before us.

Plaintiff claims next that the order of the Appellate Court, after the remanding clause has been stricken, is not reviewable because the case cannot be completely adjudicated in this court. She strenuously urges that if the defendant fails here the case must be retried, with the result that defendant has lost nothing and the case has not been resolved by the appeal. These considerations, however, are no bar to our jurisdiction. Section 11 of article VI of the Illinois constitution confers jurisdiction upon this court "in such other cases as may be provided by law." Thus the legislature could constitutionally authorize an appeal in the circumstances of this case and in fact has done so by the plain terms of section 75(2)(c), which allows review here by leave to appeal after the remanding clause has been stricken from the Appellate Court's order. Furthermore, this is not the only instance where we have jurisdiction to hear an appeal even though our review may not finally dispose of the case. (Cf. *Van Dam* v. *Van Dam,* 21 Ill.2d 212; *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103.) Here, since jurisdiction exists pursuant to section 75(2)(c) and the trial court must be affirmed, no question of the conse-

quences of an affirmance of the Appellate Court, or of a denial of the petition for leave to appeal, is reached.

On the first appeal, as already discussed, the Appellate Court erroneously held that whether defendant's articles were subject to the construction claimed by plaintiff in her complaint was one of fact rather than law. After remandment, trial, verdict and judgment for defendant the Appellate Court again held in effect that the complaint stated a cause of action. It is reasonable to assume that a second trial might result in a judgment which would prompt a third appeal and possibly another remandment. The parties could remain on such a tread-mill indefinitely through any number of trials following remandments by the Appellate Court. And according to plaintiff's contentions, the case might never be reviewed by this court unless or until a judgment is entered in the trial court which is not reversed or remanded for a new trial by the Appellate Court. Only then could we stop the fruitless cycle by a determination that the complaint upon which the numerous trials were predicated never stated a cause of action. Section 75(2)(c) was intended to streamline litigation by obviating in appropriate cases needless retrials and appeals. (*Bowman* v. *Illinois Central Railroad Co.* 11 Ill.2d 186, 197.) This is such a case.

Accordingly, and for the reasons stated, we reverse the judgment of the Appellate Court and reinstate and affirm the judgment of the circuit court in favor of the defendant.

*Appellate Court reversed; circuit court affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

This court is without jurisdiction to consider this case because the defendant has not taken the steps which are required by statute to make the judgment of the Appellate Court reviewable in this court. The constitution distributes jurisdiction between this court and the appellate courts. It provides that appeals and writs of error to review judg-

ments of the appellate courts "shall lie to the supreme court, in all criminal cases, and cases in which a franchise or freehold or the validity of a statute is involved, *and in such other cases as may be provided by law."* (Const. art. VI, sec. 11, Italics supplied.) 'Neither the validity of a statute nor a franchise or freehold is involved in this civil case. Jurisdiction therefore depends upon whether or not the case falls within the italicized clause of the constitution,—that is, upon whether or not jurisdiction to review the judgment of the appellate court has been otherwise "provided by law."

The only relevant statutory provision is section 75(2) (c) of the Civil Practice Act, which reads as follows: "(c) In any case heard and determined in the trial court upon actual trial in which the Appellate Court upon appeal from the final judgment or decree entered in the cause in the trial court reverses the judgment or decree and remands the cause for a new trial or hearing, and in which the party in whose favor the trial court's judgment or decree was rendered presents to and files with the Appellate Court an affidavit stating that he will be unable on a future trial or hearing to adduce other or additional evidence, facts or circumstances than were adduced in the trial court and expressly waiving the right to a new trial or hearing and consenting and requesting that the portion of the judgment of the Appellate Court remanding the cause for new trial or hearing be deleted and stricken from the judgment of the Appellate Court, then that court upon motion shall amend its judgment by striking out the portion thereof remanding the cause for new trial or hearing. Thereupon it is competent for the Supreme Court to grant leave to appeal from such final judgment of reversal for its review and determination with the same power and authority in the case, and with like effect, as in other cases in which leave to appeal from the final judgments of the Appellate Courts is authorized in this section." Ill. Rev. Stat. 1961, chap. 110, par. 75.

In the present case the defendant has refused to take the

steps required by the statute, and therefore this court is without jurisdiction. Although the facts are clear and the parties have argued their legal effect, the opinion of this court fails to mention the matter, and therefore it is necessary to state the relevant circumstances here. The affidavit in support of the defendant's motion to strike the remanding clause did not, as the statute requires, contain any statement "expressly waiving the right to a new trial or hearing." Instead it stated that the affiant "expressly and affirmatively states that nothing contained in the affidavit is in any way a consent to the entry of any ultimate finding of any liability of any money judgment against the defendant-appellee * * *."

If there was any doubt as to the meaning of this reservation, it is removed by the following statements of the defendant in support of the motion it made in this court to require the Appellate Court to strike its order remanding the cause for a new trial: "Thus once the remanding order is stricken in accordance with the section (75(2)(c)) the case comes before this Court with a final order, i.e., reversed. If the Court does in its discretion hear the case and holds the Appellate Court was correct in reversing the judgment (or affirms the Appellate Court for whatever reason) the remanding order would be reinstated here. If, on the other hand, review is not granted, either this Court, in its order denying the petition for leave to appeal (or the Appellate Court itself) would reinstate the remanding order so that the plaintiff could proceed to the ordered retrial. * * * We freely concede that different consequences may flow as between a plaintiff and a defendant in the filing of the Section 75(2)(c) motion and affidavit, i.e., a plaintiff's filing results in his losing all right to a retrial while a defendant's filing apparently results in his being precluded upon any retrial from making any defenses or offering any evidence not made at the first trial."

Thus it is clear that the defendant did not, as section

75(2)(c) requires, file an affidavit "expressly waiving the right to a new trial or hearing." Instead, it expressly sought to reserve the right to a new trial, and to substitute for the required statutory waiver an anomalous procedure by which the new trial is waived if the defendant ultimately prevails, but is not waived if the plaintiff prevails. Of course the statute does not authorize such a procedure, and this court is without jurisdiction.

Mr. CHIEF JUSTICE HERSHEY concurs in this dissenting opinion.