WILLIAM A. GRIGGS, Plaintiff-Appellant, *v.* THE BOARD OF FIRE COMMISSIONERS OF THE NORTH MAINE FIRE PROTECTION DISTRICT *et al.*, Defendants-Appellees.

First District (1st Division)    No. 81-0294

Opinion filed December 14, 1981.

Tatel, Levy & Howlett, P. C., of Chicago (Lawrence M. Karlin, of counsel), for appellant.

Wilhelm F. Levander, of Des Plaines, for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

On administrative review, the trial court affirmed a decision of the Board of Commissioners of the North Maine Fire Protection District (defendants) suspending William Griggs (plaintiff) for nine days without pay. Statements made by plaintiff were held to violate a regulation of the North Maine Fire Department (department). Plaintiff appeals.

Plaintiff is a fireman and paramedic in the employ of the department. He is also president of the local chapter of the firemen's union. On March 15, 1980, the department's front line ambulance became inoperative. The mechanical breakdown was discovered at 9:20 a.m. Initially it was estimated the repairs would take approximately 30 minutes to complete. However, the actual time of repair was approximately two hours. The officer in charge at the time of the incident, Lieutenant Kampka, contacted the Regional Emergency Dispatch Center, which informed him it could cover the area while the ambulance was inoperative.

The department also owns a station wagon. The vehicle is generally used by administrative personnel. It is department policy to use this station wagon as a temporary ambulance if the front line ambulance becomes inoperative. The transfer of necessary emergency equipment from the ambulance to the station wagon is readily made in from 2 to 5 minutes.

At the time of the incident, the station wagon was in the possession of Deputy Chief Holtz, who was not on duty. Lieutenant Kampka informed Holtz of the situation and asked him whether he felt it necessary to bring in the station wagon and activate it as a temporary ambulance. Holtz reportedly replied he did not think it was necessary, and did not bring the wagon down to the station. Holtz was not informed that, as above stated,

the actual time of repairs was longer than first estimated. During the time the ambulance was inoperative, there were no emergency calls to the department.

Plaintiff was informed of the occurrence by a fellow fireman who thought it was a "matter of importance." Plaintiff thereafter discussed the incident with eight other firemen.

On or about April 7, 1980, plaintiff was contacted by a reporter from The Highlander, a local newspaper. The principal topic of the interview was the local tax situation and the loss of tax income to the Fire District. The article as published quoted plaintiff as stating that Deputy Chief Holtz "refused to bring the other ambulance to the station." The article also contains a statement by plaintiff that Regional Emergency Dispatch Center had agreed to cover the area in the case of an emergency call. The article also reports a statement by Deputy Chief Holtz that he carries his "page everywhere I go" so he could "respond within a few minutes" and that he told the men that if the ambulance was "down longer than planned, I would bring the other one back."

Section 5.17 of the Rules and Regulations of the department provides:
> "Discrediting Other Members. No member of the department shall wantonly or maliciously make or circulate or cause to circulate any false report regarding any other member, calculated to bring such member into discredit."

In the proceedings below, defendants found plaintiff's statement was knowingly false and maliciously intended to discredit Deputy Chief Holtz in violation of the above regulation. On administrative review, the trial court sustained his suspension. Defendants' argument in this court stresses the inaccuracy of the word "refused" in plaintiff's statement. Defendants contend because Deputy Chief Holtz was neither "ordered" nor "requested" to return the vehicle, he could not have "refused" to return it.

Plaintiff argues the statement was "substantially" correct particularly in light of the "innocent construction rule" and the statement was protected by the first amendment.

In our opinion, the factual issue here is one of plaintiff's intent in making the published statement. The regulation is directed against wanton or malicious circulation of a false report. Defendants cite the legal or technical definition of "refusal" as stated in Black's Law Dictionary 1152 (5th ed. 1979). This authority defines the word at length as including, "A rejection, a denial of what is asked." However, the problem here is not the precise legal definition of the word but rather the ascertainment of the intent of plaintiff who is not a lawyer but a fireman. A simple definition of the word is thus more applicable to the case at bar.

"Refuse" is defined as "1: avoid, shun 2: to decline to accept: reject * * * 3a: to show or express a positive unwillingness to do or comply

with (as something asked, demanded, expected) * * *." (Webster's Third International Dictionary 1910 (16th ed. 1971).) Defendant's argument appears based on the third definition; to exhibit a positive unwillingness to do something asked or demanded. While Deputy Chief Holtz may not have positively exhibited an "unwillingness to comply," his actions could possibly be categorized as a "declination to accept" an invitation to return the vehicle.

We believe the matter here is best solved by application of the innocent construction rule. In *John v. Tribune Co.* (1962), 24 Ill. 2d 437, 442, 181 N.E.2d 105, *cert. denied* (1962), 371 U.S. 877, 9 L. Ed. 2d 114, 83 S. Ct. 148, the supreme court held that "words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." Although *John* involved an action in libel while the case at bar does not, *John* is applicable because by specifying the statement must be made "wantonly or maliciously," "false" and calculated "to discredit," the regulation establishes a standard similar to the standard for libel. *Cf. Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 588, 297 N.E.2d 316.

The issue here is not made by statements of plaintiff to the reporter in the interview. The issue rises from the article as printed in the newspaper. *John v. Tribune Co.* requires that "the article is to be read as a whole and the words given their natural and obvious meaning * * *." (24 Ill. 2d 437, 442-43, and cases there cited.) The complete absence of malicious intent from plaintiff's mind is demonstrated strongly by plaintiff's statement that if an emergency "occurred, an ambulance would have been dispatched from one of four neighboring Regional Emergency Dispatch (RED) Centers * * *." Also the article reflects the statement by Deputy Chief Holtz above quoted. This material minimized the entire incident and completely refuted any inference which could conceivably result from use of the word "refused."

Furthermore, plaintiff's statement in a quoted interview must be considered in the light of the first amendment and by more general public policy considerations. While the first amendment rights of a public employee may be limited, they may not be destroyed. (*Muller v. Conlisk* (7th Cir. 1970), 429 F.2d 901, 904.) Additionally the governmental body has the duty to demonstrate the impairment of free speech is justified. (*Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 589.) To sustain its burden, the public entity must show: (1) the plaintiff made the statement; (2) that the statement was in fact false; and (3) that the plaintiff made the statement intentionally knowing it was false or with reckless disregard of its truth or falsity. (*Shipp v. Davis* (1977), 48 Ill. App. 3d 463, 362 N.E.2d 822, *appeal denied* (1977), 66 Ill. 2d 636.) It is manifest that this record fails entirely to fulfill this third requirement.

In *Shipp*, this court sustained the suspension of a fireman whose statement was considered violative of departmental regulation and not constitutionally protected. However, *Shipp* is distinguishable from the case at bar. In *Shipp*, the plaintiff accused the Fire Chief of unlawfully favoring nonunion firemen in the promotion process. The court found evidence in the record to suggest the statement was "motivated by strong feelings of animosity" (48 Ill. App. 3d 463, 466), and with "no factual basis" (48 Ill. App. 3d 463, 467). We find *Shipp* factually inapposite to the instant case where plaintiff stated Holtz "refused" to bring down the vehicle and where it is undisputed that Holtz "declined" to bring the vehicle to the station. Even if defendants could prove plaintiff's statement was factually inaccurate, the record falls far short of proof that the statement was "intentionally false" or made with "reckless disregard" for its veracity.

In *Pickering v. Board of Education* (1968), 391 U.S. 563, 20 L. Ed. 2d 811, 88 S. Ct. 1731, the Supreme Court reversed the dismissal of a teacher for publishing a letter in which the allocation of funds was criticized. The court enunciated a balancing test:

"The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. 563, 568, 20 L. Ed. 2d 811, 817, 88 S. Ct. 1731, 1734-35.

The court noted that public employees are particularly acquainted with issues of public importance. "Accordingly, it is essential that they be able to speak out on such questions without fear of retaliatory dismissal." *Pickering*, 391 U.S. 563, 572, 20 L. Ed. 2d 811, 819, 88 S. Ct. 1731, 1736.

In the case at bar, the statement made by plaintiff certainly dealt with a matter of public concern. The statement involved the emergency procedures of the department, which could readily reflect upon public safety. As noted by the court in *Pickering*, we find there was no showing in the hearing before defendants that the statement seriously impaired the normal operation of the department.

The findings by defendants are to be considered as "prima facie true and correct." (Ill. Rev. Stat. 1979, ch. 110, par. 274.) However, it is the duty of this court, as a reviewing court, to ascertain "whether the findings and decisions of the administrative agency are against the manifest weight of the evidence." (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229. See also *Baehr v. Health & Hospital Governing Com.* (1980), 86 Ill. App. 3d 43, 47, 407 N.E.2d 817, and cases there cited.) The evidence here does not in any measure support the defendants' finding that plaintiff

maliciously circulated a false report to discredit his superior. Also, as above demonstrated, the result reached by defendants is contrary to law and to the first amendment of the Constitution so that reversal is required.

This opinion should not be considered as an invalidation of the departmental regulation here involved. We hold simply that the application of this regulation must be limited to malicious conduct so as not to avoid infringement upon the first amendment rights of the employees of defendant.

For these reasons, the judgment appealed from is reversed.

Judgment reversed.

CAMPBELL, P. J., and McGLOON, J., concur.