# George W. Davis, Appellant, v. Ella Ferguson, T. A. Ferguson, W. S. Van Doren, and John I. Groves, Appellees.

## Gen. No. 8,121.

1. LIBEL AND SLANDER—*what will not charge sheriff with failing to pursue felons.* A publication concerning a candidate for sheriff that his prior record as sheriff was almost blank, that the crooks were for him, and that he could not cope with the crooks, does not charge that he ever failed promptly to pursue felons when he had knowledge that a felony had been committed.

2. LIBEL AND SLANDER—*what will not charge sheriff with failing to conserve the peace.* A publication concerning a candidate for sheriff that his prior record as sheriff was almost blank and that he did not know how to conduct his office, does not charge that he failed to keep the peace in regard to offenses occurring ''in view'' and does not bring him into public contempt on that account.

3. LIBEL AND SLANDER—*what will not charge sheriff with failing to enforce Prohibition Act.* A publication concerning a candidate for sheriff that his prior record for sheriff was almost a blank and that he could not cope with the crooks, does not charge an actual violation of his duty under the Prohibition Act, the section concerning which in Cahill's St. ch. 43, ¶ 43, makes a literal following of it so difficult that the publication raised a political rather than a legal question.

4. LIBEL AND SLANDER—*charge of failure to enforce law.* On admission by demurrer to a complaint for libel that a sheriff had conducted the affairs of his office in a fearless manner, held not libelous per se to say that his record for enforcement of the Prohibition Act in its requirements for liquor searches on suspicion was almost a blank and that he had done almost nothing to enforce the law, in view of all the allegations of the declaration.

5. LIBEL AND SLANDER—*charge of candidate being supported by various criminals.* On admission by demurrer to a complaint for libel that a sheriff had conducted the affairs of his office in a fearless manner, and in view of the sympathy and association among thieves, burglars and bank robbers on the one hand, and gamblers and liquor law violators on the other, many of whom follow both occupations, held not libel per se to publish that they were all supporting the sheriff as candidate.

6. LIBEL AND SLANDER—*publishing support of candidate by law breakers.* On admission by demurrer to a complaint for libel that a sheriff had conducted the affairs of his office in a fearless manner, held

not libel per se to charge that thieves, burglars, bank robbers, gamblers and liquor law violators were supporting the sheriff as a candidate, in view of the legal presumption that the support was due to preference and not to a criminal agreement.

7. LIBEL AND SLANDER—*improper performance of official duties.* A charge that a public official did not properly enforce the duties of his office is not libelous per se unless such actions on his part were charged to be done with dishonest purposes.

8. LIBEL AND SLANDER—*publishing sheriff's record on prohibition enforcement as not libel per se.* It is not libel per se in a campaign for the office of sheriff to discuss the record of a candidate during his prior terms as sheriff in regard to his enforcement of the Prohibition Act.

9. LIBEL AND SLANDER—*right to defend for publication concerning sheriff's prohibition enforcement.* A publication concerning the record for prohibition enforcement of a candidate for sheriff during his prior terms in that office is not malicious if made to inform the public of what he stands for, and may be defended, if true and published with good motives and for justifiable ends.

10. LIBEL AND SLANDER—*when question of damage political.* A publication concerning the prior record in office of a candidate for sheriff, which is not libelous per se, gives rise only, as regards any damage he may have suffered, to a political question which the courts will not consider.

11. APPEAL AND ERROR—*moot question in pleading.* After a count in plaintiff's declaration for libel was held demurrable, the question of whether the plea to that count was properly framed becomes academic and will not be passed upon.

Appeal by plaintiff from the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1927. Affirmed. Opinion filed October 31, 1927.

DOBBINS & DOBBINS and CLARK & NOEL, for appellant.

ACTON, ACTON & SNYDER, HARRY A. BARR and ROGER F. LITTLE, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action for libel, based on three separate publications. The declaration consists of three counts, to the second and third of which demurrers were sus-

tained. Appellees filed the general issue and two special pleas. A demurrer was sustained to the second special plea, overruled as to the first and the general issue was withdrawn. Appellant (plaintiff) elected to abide by his demurrer to the first special plea and judgment was entered thereon, barring the action. Appellant has appealed and assigns as error the overruling of his demurrer to the first special plea and the sustaining of appellees' demurrer to the second and third counts of the declaration. The declaration averred in each count that before the several grievances, etc., the appellant was a person of good name, credit and reputation and deservedly enjoyed the esteem and good opinion of his neighbors and other worthy citizens of this State; that for the period of four years ending on the first Monday in December, 1914, and also for the period of four years commencing on the first Monday in December, 1918, and ending on the first Monday in December, 1922, appellant had held and executed the office of sheriff in and for the county of Champaign and state aforesaid and as such sheriff during both of said terms did faithfully execute the duties of said office of sheriff, and faithfully enforced the laws of the State of Illinois, and always performed the duties of his said office as sheriff in a fearless and straightforward manner and was deservedly held in good credit and esteem by his neighbors, etc., and by those who were familiar with the character of appellant and with his conduct of the said office, and that he had never been guilty of any conduct by which it could be rightfully said that his record was a blank, nor that appellant had held said office and done nothing, nor that it could rightfully be said that appellant was courting and trying to receive the support of crooks and of persons who were crooks and criminals, and that while appellant was sheriff the crooks and criminals would conduct the business of said county.

Said counts further averred that on, to-wit, the 28th day of October, 1926, at, etc., appellant was a public candidate for election to the office of sheriff of said county, for the term commencing. the first Monday in December, 1926, and that appellees, well knowing the premises, etc., did wickedly and maliciously compose and publish of and concerning appellant the false, scandalous, malicious, defamatory and libelous matters following, etc.

We shall set out the articles charged as libelous substantially as alleged in the first, second and third counts, the matter in the second and third counts being preceded by some other charges by way of inducement not of importance in this recital:

*First Count.* "Sheriff Gray (meaning then sheriff of said county) has made the greatest record in Illinois in catching thieves and burglars and bank robbers and has arrested over 700 gamblers and liquor law violators, with 450 convictions and over 100 cases pending, and over $45,000 in fines and costs assessed against these crooks. Sheriff Davis' (meaning this plaintiff's) record, except where he (meaning the plaintiff) did not get the evidence, is almost blank. It is no wonder these crooks are for him (meaning the plaintiff) and boast that they (meaning the thieves, burglars, bank robbers, gamblers and liquor law violators) will run this county for the next four years. The sheriff is supposed to be our law enforcement officer. Why should we (meaning the legal voters of the said county of Champaign) elect and pay a salary for an officer who does nothing? He (meaning the plaintiff) has had this office twice and tried to elect his son and now wants it again. What has he (meaning the plaintiff) done for the public in his (meaning the plaintiff) two terms in office that he (meaning the plaintiff) should expect to feed at the public crib all the time? It would pay the county thousands of dollars to pay him (meaning the plaintiff) a salary and send him

(meaning the plaintiff) away and hire a man to do what should be done." '

*Amended Second Count.* "ELECT ULITSCH (meaning one of the opposing candidates) SHERIFF — SHERIFF'S (meaning the plaintiff's) RECORD, TWO TERMS (meaning the two terms served by this plaintiff as sheriff.) John Gray's (meaning the then sheriff's of said county) record:—Over 700 gamblers and liquor law violators arrested. Over 450 convictions. Over $45,000 in fines and costs assessed and over 100 cases pending. The greatest record in Illinois in all lines.

"Geo. Davis's (meaning the plaintiff's) record:— Except cases where he did not get the evidence his (meaning the plaintiff's) record is almost blank.

"It is no wonder the crooks are boasting that they will run this county the next four years (meaning the so-called crooks would conduct the office of sheriff if this plaintiff was elected). This mild little man (meaning the plaintiff) could not, if he (meaning the plaintiff) would, cope with this gang, for after getting their support (meaning the support of the gamblers, liquor law violators and other crooks and criminals) they (meaning the same) would kill him (meaning the plaintiff) if he (meaning the plaintiff) dared bother them (meaning the crooks, gamblers, liquor law violators and other criminals). With crocodile tears they (meaning the same) now ask honest voters to vote a straight republican ticket when four years ago they (meaning the same) knifed Gray to their limit. Shall we turn this county over to them? (Meaning that should this plaintiff be elected to the office of sheriff, that the duties of said office would be controlled by gamblers, liquor law violators and other criminals.)

"Edward Ulitsch, who has worked four years with Gray and O'Neil and has their confidence, and has helped make such a splendid record, can be elected sheriff and this record will be continued, if those who

voted for O'Neil in the primary will now vote for Ulitsch next Tuesday.

"For the honor of the county we urge this to be done for it will not do to turn this county with its great University over to the crooks (meaning and intending that it would not do to elect this plaintiff to the office of sheriff, and that if they would do that, that the business of the sheriff's office in said county would be controlled by crooks.)

"VOTE FIRST FOR ULITSCH! IT IS THE MOST IMPORTANT THING IN THIS ELECTION. —Publicity Committee, Law and Order League, Mrs. T. A. Ferguson, Sec."

*Third Count.*

"TO CHAMPAIGN COUNTY VOTERS

"Our present sheriff force has caught more thieves, burglars, and bank robbers than ever before and has also had $40,000 in fines and costs assessed against bootleggers and gamblers at a cost to the county of less than $5,000. This record proves that former sheriffs (meaning this plaintiff and others who prior to this plaintiff had held said office of sheriff in said county) did not care, did not know how, or were afraid to molest the crooks (meaning the said thieves, burglars, bank robbers, bootleggers and gamblers theretofore referred to in said statement). This also proves that such a sheriff force is worth $35,000 more to the tax payers than one (meaning thereby a sheriff force under this plaintiff as sheriff) which serves only papers and lets the crooks alone (meaning and intending thereby to charge that this plaintiff, if elected as sheriff, would let the crooks alone; and meaning by said crooks, the said thieves, burglars, bank robbers, bootleggers and gamblers therein before referred to in said article.)"

None of the counts averred any special damage resulting to appellant. Appellee's plea to the first count in the declaration was a plea of justification of the

truth of the charge. It averred that appellees were citizens and residents of said county and with other citizens, etc., were associated together as a voluntary association known as "The Law and Order League" and that some of said appellees were officers in said league, and that the purpose of said league was to secure the election of a man for sheriff of said county who would actively seek evidence against those violating the law in said county in reference to the unlawful sale and possession of intoxicating liquors and the statute in reference to gambling, and who, by thus securing the information of such law violations, would enable the prosecution of such violators of the law and thereby free the county of gambling and liquor violators. The plea further sets out the location of the State University at Champaign, with its large body of students, and the public necessity or moral obligation to protect that body of students, as well as the citizens of the county, from intoxicating liquors and vice. The plea avers the election and the active candidacy of appellant for the office of sheriff. The plea denied the innuendoes set out in count one of the declaration, and denied that it was charged that "crooks and criminals would control said plaintiff while in office," etc.; or that it was intended to charge that appellant, if elected, would do nothing in office; or that the record of said appellant in said office was a blank; or that said appellant did nothing to enforce the laws of the State. The plea denied that it was the intention, by said publication, to persuade the voters to believe that appellant had used no efforts whatsoever to apprehend thieves, burglars, robbers, and other criminals, or that appellant, if elected, would do nothing to catch thieves, burglars or bank robbers, or to arrest gamblers or law violators. The plea further avers:

"And the defendants further aver that with good motives and for justifiable ends and without malice they did truthfully publish in said article in comment-

ing on the fitness and qualifications of the plaintiff for the said office of Sheriff, as they rightfully and truthfully could do, and had the right to do in said publication, the matters and things set forth in said count of plaintiff's declaration, to-wit—

" 'Sheriff Gray has arrested over 700 gamblers and liquor law violators with 450 convictions and over 100 cases pending and over $45,000 in fines and costs assessed against these crooks.

" 'Sheriff Davis' record except where he did not get the evidence is almost blank. It is no wonder these crooks are for him and boast that they will run this county for the next four years.'

"And the defendants deny that the meaning and intention of the said publication, to-wit, 'It is no wonder these crooks are for him, and boast that they will run this county for the next four years,' was that the thieves, burglars and bank robbers will run this county for the next four years.

"And the defendants further aver that said publication was made in entire good faith, and for the purpose of advising the voters as to the fitness and qualifications of said respective candidates for said office of Sheriff, so that they could intelligently exercise their elective franchise, and was made with good motives and justifiable ends and without any malice whatsoever against the plaintiff."

Appellant filed a general and special demurrer to this plea, which the court overruled. It is strenuously insisted by appellant that the plea is insufficient, because it does not set forth the specific facts upon which the statements are based, but merely avers that the statements are true—citing authorities.

Appellees moved the court to carry this demurrer back to the first count in the declaration, which motion was denied. Appellant has assigned error upon the demurrer being sustained to the second and third counts. We consider these first, and the question goes

to the entire charge. Appellant insists that the charge in each count is libelous *per se,* citing: *People v. Strauch,* 247 Ill. 220, 228, in which case the charge was that said Stransky had prostituted his office for private interests and political purposes, for spite; "that he was in collusion with violators of the liquor law; that he was actuated by improper motives with reference to the bridge trust; that there was no doubt but that the bridge trust had proven a fat goose for someone," etc., plainly charging the commission of a crime. *Ogren v. Rockford Star Printing Co.,* 288 Ill. 405, 413, in which case plaintiff alleged libel for publications during the time he was a candidate for mayor of the City of Rockford, and where the court said: "By charging him with making the two speeches or alleged statements at the council meeting and at the theater building, the second article in substance charged that he himself had declared himself as a man who would by his official acts be opposed to and decide against corporations, right or wrong, upon all questions; that he was in favor of a division of profits already made and without further work,—a rebel against the present system and in favor of blowing up tenement houses, etc. There can be no question that such charges tend to impeach the honesty, integrity and reputation of plaintiff and to expose him to public hatred, contempt and ridicule." *Cerveny v. Chicago Daily News Co.,* 139 Ill. 345, 354, where it is held: "And it would seem so apparent that an individual may be brought into hatred, contempt or ridicule, within the meaning of the law, by professing vicious, degrading or absurd principles and especially by professing them and also confederating with others alike professing them, to give them effect, that it can need no discussion." *People v. Fuller,* 238 Ill. 116, 124, in which case the court held: "Under the statute any malicious defamation tending to impeach the honesty, integrity, virtue or reputation of another, and thereby to expose him

to public hatred, contempt, ridicule or financial injury, is a libel. It is not necessary that it should amount to a charge of crime. The charge is that Merriman filched large sums by illegally taking, in three years, $802.30 to which he was not entitled. The established rule in this State is that the words in an action of libel must be taken in the sense which the readers of common and reasonable understanding would ascribe to them,—that is, in their ordinary or common acceptation.  *  *  *  The charge against a public officer that by breach of trust or wrongfully he has taken from the public treasury money to which he was not entitled certainly tends to impeach his honesty and integrity and to expose him to public hatred and contempt, whether it amounts to a charge of statutory crime or not.''

It may be conceded that the publications do not charge appellant with the commission of any crime, nor with the expression of principles subversive of government. Do the publications tend to impeach the honesty, integrity, virtue or reputation of appellant and thereby expose him to public hatred, contempt, ridicule or financial injury? No financial injury is charged and we shall examine the charges specifically as they may affect appellant's reputation for honesty, integrity or virtue: In the first count it is charged: ''Sheriff Davis' record, except where he did not get the evidence, is almost blank.'' This is somewhat qualified by being in comparison with the record of Sheriff Gray, who had made ''the greatest record in Illinois'' catching thieves, burglars and bank robbers, arresting over 700 gamblers and liquor law violators, ''with 450 convictions and 100 cases pending,'' and with $45,000 fines and costs assessed against these crooks; by crooks, evidently meaning the thieves, burglars, bank robbers, gamblers and liquor law violators who would properly come under the definition of a ''crook.'' Then the publication proceeds: ''It is no

wonder these crooks are for him, and boast that they will run this county for the next four years." The language is plain and unambiguous and needs no innuendo to interpret it. It was made in a political campaign and its meaning must be interpreted by the court from the language used in the sense it conveys to the mass of voters in the county. The publication proceeds: "The sheriff is supposed to be our law enforcement officer. Why should we elect and pay a salary for an officer who does nothing? He has had this office twice and tried to elect his son and now wants it again. What has he done for the public in his two terms in office that he should expect to feed at the public crib all the time? It would pay the county thousands of dollars to pay him a salary and send him away and hire a man to do what should be done."

From this publication appellant assumes that he is charged with doing nothing while he was sheriff, not even performing his official duties, and that the charge is that he will permit, by some voluntary act, his office to be controlled by crooks and thieves. We do not so understand the language used. The publication was that the thieves and crooks boasted that they would run the county not the office of sheriff. The publication is modified by comparing the records of Sheriff Gray and appellant as to the law enforcement by the sheriff, and the clause in the publication—"The sheriff is supposed to be our law enforcement officer." We think the publication is fairly susceptible to the construction that it is speaking only of appellant's duties in relation to law enforcement.

The article in the second count is signed by the Publicity Committee of The Law and Order League. There is not much public ignorance as to the functions of leagues of that kind. Speaking of appellant the article says: "It is no wonder these crooks are for him." Would the purport of the publication have

been any differently understood if it had stated: "It is no wonder these crooks are against Sheriff Gray or any one like him?" The real question is, what are the legal duties of the sheriff as to law enforcement; and by charging a sheriff with having a record "almost blank" and "doing nothing" as to law enforcement, what position does that place the officer before the law, and to what extent does it bring him into public ridicule and contempt for violating the law? At first blush, it seems to be a legal question altogether and by a full examination of the statute it may have its political aspects. Section 678 of chapter 38, Cahill's St. ch. 38, ¶ 678, provides: "When the fact that a felony has been committed shall come to the knowledge of any sheriff, coroner or constable, fresh pursuit shall be forthwith made after every person guilty thereof, by such sheriff, coroner, constable and all other persons who shall be by any of them commanded or summoned for that purpose; every such officer who shall not do his duty in the premises shall be punished by fine in a sum not exceeding $100, or imprisoned not exceeding three months."

Section 17 of chapter 125, Cahill's St. ch. 125, ¶ 17, provides: "Each sheriff shall be conservator of the peace in his county, and shall keep the same, suppress riots, routs, affrays, fighting, breaches of the peace, and prevent crime; and may arrest offenders on view, and cause them to be brought before proper magistrates for trial or examination."

Section 42 of the Prohibition Act, Cahill's St. ch. 43, ¶ 43, provides: "It shall be the duty of all municipal, county, and State officials to co-operate in the enforcement of this Act.

"If any sheriff, deputy sheriff, chief of police, marshal, policeman, constable or other peace officer shall have knowledge, information or suspicion of any violation of any provision of this Act, he shall diligently investigate and secure evidence of the same and shall,

before the proper officer, make and sign complaint against the offending person, anything in the ordinance or by-laws of any municipality to the contrary notwithstanding.''

Under the first section cited: "When the fact that a felony has been committed shall come to the knowledge of any sheriff, etc.,'' we find nothing in any of the publications warranting the inference that appellant has been derelict in his official duty. No intimation is made that appellant has not always acted promptly when he had knowledge that a felony had been committed.

The second section relates to riots, routs, affrays, fighting, breaches of the peace and crimes of that nature committed within "view," and in regard to this duty appellant may have been as efficient as any sheriff in the state, for all that appears in the declaration. That appellant had not caught as many thieves, burglars and bank robbers as the sheriff who made the greatest record in Illinois in that line, because he, appellant, "did not know how," neither charges him with an offense, a failure to perform his official duty, nor brings him into public contempt or ridicule, and should not wound his official pride. It is plain that the publications in question were intended to impress the voters with appellant's lack of vigor and enthusiasm, if not his failure of duty, to enforce the Prohibition Act under section 42, Cahill's St. ch. 43, ¶ 43 *supra.* In that respect he was entitled to the co-operation, in the enforcement of the act, of all municipal, county and state officials in Champaign county. That section provides: "If any sheriff, deputy sheriff, chief of police, marshal, policeman, constable or other peace officer shall have knowledge, *information* or *suspicion* of any violation of the act, *he shall diligently investigate* and *secure evidence* of the *same* and *shall, before the proper officer,* make and sign complaint against the *offending person.*"

The Supreme Court has never passed upon the constitutionality of all of the provisions in this section, and the question is not raised in this court, and this court would have no power, if raised, to declare any of the provisions of the section void. The section, therefore, as it applies to this case must be held valid and to mean just what its languages recites. It follows that it is the duty of the sheriff to diligently investigate and secure evidence whenever he has a *suspicion* that *any provision of the Act* has been violated. About this he has no discretion. The evidence must be secured and the sheriff "shall make complaint," the form of which is prescribed under oath in the statute. From the rigor of this section and the difficulty in following its language literally, there may have been some otherwise good sheriffs who have lost heart and lacked vigor and enthusiasm in the enforcement of the law, and abandoned such enforcement entirely where dependent upon their *information* or *suspicion* as a guide. The merits or demerits of what a sheriff can accomplish in the enforcement of law by following the provisions of the act, is not a proper subject for consideration by this court, but is a political question to which the publications in question were directed.

In considering each count in the declaration, upon demurrer, it must be considered that the allegation of appellant that he faithfully executed the duties of the office of sheriff during his two terms, and performed such duties in a fearless and straightforward manner, was true and admitted by the demurrer to be true. To say that appellant's record in the enforcement of law under this section was almost a blank in comparison with Gray's, is not libelous *per se*. To say that appellant had done nothing in the enforcement of law, under this section, in view of all the allegations in the declaration, is not libelous *per se*. In view of the sympathy, relationship and association among thieves, burglars and bank robbers on the one hand, and gam-

blers and liquor law violators on the other, many of
whom follow both occupations, it was not libelous *per
se* to join the various law breakers in the publications
set out in the declaration. It was not libelous *per se*
to charge that thieves, burglars, bank robbers, gam-
blers and liquor law violators were supporting appel-
lant for sheriff and boasting that they would run said
county for the next four years, because the law will
presume that their support was induced wholly by
their preference for appellant over any other candi-
date; and the boast that they will run said county may
refer entirely to politics or some other subject, and
does not tend to show any criminal connection with
appellant or impugn his honesty or integrity in any
manner. It has no relation to the office of sheriff. It
has been held that, "The conduct charged must be of
such a nature as to reflect upon the character and in-
tegrity of the plaintiff and to subject him to a loss of
public confidence and respect; and a writing, although
charging wrongful conduct or dereliction of duty, is
not libelous *per se,* within the meaning of the rule,
unless it imputes a dishonest or fraudulent motive or
interest." 36 Corpus Juris. 1168. Inasmuch as the
sheriff is the chief law enforcement officer of the
county, and it is made his duty by law, upon knowledge
or information, to investigate, procure evidence and
prosecute, under the Prohibition Act, it cannot be
libel *per se* in a political campaign, for the office of
sheriff, to discuss his record in regard to law enforce-
ment. If the matter is published for the purpose of
informing the public of the things the candidate stands
for, and of his character and history, then it would
not be a malicious publication, and if it is not a mali-
cious publication it can be defended against if the mat-
ter published is true, and done with good motives and
for justifiable ends. *Ogren v. Rockford Star Printing
Co.,* 237 Ill. App. 349, 357.

It is held in Townsend on Slander and Libel (4th ed.
sec. 146): "The language charged to be libelous was

not actionable *per se*. It has been held that in order to constitute language libelous *per se,* it must be either such as necessarily, in fact, or by presumption of evidence, occasions damage to him of whose affairs it is spoken. Language which, however, does not, as a necessary consequence, occasion damage to the party published, is not *per se* libelous and in such a case a right of action exists only when, as a necessary and proximate consequence of the publication, special damage ensued to the party published.''

In the view we take of this case, it would be a political question to determine whether appellant was damaged or benefited by the publication of the articles, and that neither of said articles contained matter which was libelous *per se,* and that the court, therefore, should have carried the demurrer to the plea back to the first count in the declaration and sustained it. Much that has been said as to the first count in the declaration could be reiterated as to the second and third counts. The court did not err in sustaining appellees' demurrer to the second and third counts in the declaration.

Appellant's demurrer to the first additional plea remains to be considered. It is contended by appellant that it is the duty of the appellees, under a plea, to set forth facts showing the truth of the matter as averred in the declaration, and not to simply deny the innuendos of the declaration; that the plea should set forth the specific facts upon which the statements are based, and that it is not sufficient to simply aver that the statements are true and that the plea is defective. In the view we take of the case the question is practically academic. Inasmuch as we have held appellant's first count in the declaration subject to demurrer, we have no occasion to pass upon the sufficiency of the plea to that count.

The judgment of the circuit court of Champaign county is therefore affirmed.

*Affirmed.*